PT:LXN/MMS
F. #2010R00132, 2015R00498, 2015R00499

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 14 2015 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

LARAINE CASTELLANO,
     also known as "Laraine Lia,"
THOMAS SCIALPI and
DENNIS SCIALPI,

                    Defendants.

- - - - - - - - - - - - -X

INDICTMENT

Cr. No. _____ CR15 523
(T. 18, U.S.C., §§ 371, 982(a)(2)(A), 1344,
1349, 2 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p))

GARAUFIS, J.

ORENSTEIN, M.J.

THE GRAND JURY CHARGES:

At all times relevant to this Indictment, unless otherwise indicated:

A.  <u>The Defendants, Their Corporate Entities and the Victim Banks</u>

1.  USA United Holdings, Inc., also known as Shoreline Merge, Inc. ("USA United") was a holding company with numerous subsidiaries including: (a) USA United Fleet, Inc., also known as Shoreline Fleet, Inc.; (b) USA United Transit, Inc., also known as Shoreline Pupil Transit, Inc.; (c) United Tom Tom Transportation, Inc., also known as Shoreline Buses, Inc. ("United Tom Tom"); (d) USA United Bus Express, Inc., also known as Shoreline Bus Express, Inc.; and (e) United Fleet, Inc. (collectively, including the holding company and the subsidiaries, the "United Entities"), all of which were bus companies that provided transportation to children attending New York City public schools.  The United

Entities' income was derived almost exclusively from transportation contracts they held with the New York City Department of Education (the "NYC DOE"). From approximately 2004 to 2011, the NYC DOE paid the United Entities approximately $310 million under these contracts.

2. The United Entities were operated and controlled by the defendant LARAINE CASTELLANO, also known as "Laraine Lia," and her children, the defendants DENNIS SCIALPI and THOMAS SCIALPI, from offices located at 2859 West 37th Street in Brooklyn, New York (the "United Offices").

3. Comerica Bank ("Comerica") and Sovereign Bank ("Sovereign") were "financial institutions" as defined in Title 18, United States Code, Section 20. The deposits of Comerica and Sovereign were insured by the Federal Deposit Insurance Corporation.

B. The Comerica Bank Fraud

4. In 2004, at the direction of CASTELLANO, DENNIS SCIALPI and THOMAS SCIALPI, the United Entities applied to Comerica for a $10 million loan (the "2004 Loan"). In support of the application for the 2004 Loan (the "2004 Loan Application"), the United Entities submitted to Comerica, among other things, false and fraudulent financial statements (the "Financial Statements") and false and fraudulent corporate income tax returns.

5. On or about June 17, 2004, the United Entities and Comerica executed a loan agreement for the 2004 Loan (the "2004 Loan Agreement"). The 2004 Loan Agreement was signed by DENNIS SCIALPI, THOMAS SCIALPI and John Doe #1, an individual whose identity is known to the Grand Jury, who was the spouse of CASTELLANO.

6.     The 2004 Loan Agreement stated that the primary purpose of the 2004 Loan was to establish and fund an employee stock ownership plan (the "ESOP"), a type of tax-qualified retirement plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), for the benefit of non-union employees of the United Entities.  However, even though the United Entities formally established the ESOP by filing required forms with the United States Department of Labor, the United Entities never made any of the disclosures to their employees regarding the ESOP that were required by ERISA and never funded the ESOP as promised to Comerica.  Thus, as CASTELLANO, DENNIS SCIALPI and THOMAS SCIALPI knew, nearly all of the United Entities employees who were the intended beneficiaries of the ESOP were unaware that the ESOP existed, and those employees never received the benefits to which they were entitled under the ESOP.

7.     On or about October 30, 2007, the United Entities executed another loan agreement (the "2007 Loan Agreement") with Comerica for an additional $4.5 million (the "2007 Loan").  The 2007 Loan Agreement amended and restated the 2004 Loan Agreement in its entirety and contained an affirmative covenant that the United Entities would cause the ESOP to comply in all material respects with ERISA.  The 2007 Loan Agreement was signed by DENNIS SCIALPI, THOMAS SCIALPI and John Doe #1.

8.     The 2004 and 2007 Loan Agreements obligated the United Entities to submit periodic financial statements to Comerica (the "Quarterly Financial Statements").  In or about and between June 2004 and July 2011, at the direction of CASTELLANO, DENNIS SCIALPI and THOMAS SCIALPI, the United Entities submitted materially false and fraudulent Quarterly Financial Statements to Comerica that, among other things,

4

misrepresented the financial condition of the United Entities in order to prevent Comerica from discovering that the United Entities were violating the terms of the 2004 and 2007 Loan Agreements. The United Entities ultimately defaulted on their repayment obligations under the 2004 and 2007 Loan Agreements.

C.      The Yacht Loan Fraud

9. In or about April 2007, THOMAS SCIALPI applied for a loan worth approximately $700,615 for the purpose of purchasing a yacht (the "Yacht Loan"). At the time he applied for the Yacht Loan, THOMAS SCIALPI was a resident of Staten Island, New York. In connection with his application for the Yacht Loan, THOMAS SCIALPI directed John Doe #2, an individual whose identity is known to the Grand Jury, to create false corporate income tax returns for United Tom Tom and fictitious Forms W-2 for THOMAS SCIALPI and for his wife Jane Doe, an individual whose identity is known to the Grand Jury. For example, the Form W-2 for Jane Doe falsely represented that she worked for and earned income from United Tom Tom, when in fact Jane Doe never worked there and did not earn income from United Tom Tom. THOMAS SCIALPI subsequently submitted these fabricated documents to Sovereign.

10. In approximately June 2007, relying in part on the fabricated documents submitted by THOMAS SCIALPI, Sovereign approved the Yacht Loan and disbursed approximately $700,615 so that THOMAS SCIALPI could purchase a yacht. THOMAS SCIALPI ultimately defaulted on his repayment obligations under the Yacht Loan.

D.	The Payroll Tax Frauds

11.	Pursuant to Title 26 of the United States Code, employers had a duty to truthfully account for and pay over to the Internal Revenue Service of the United States Department of the Treasury (the "IRS") payroll taxes, and to file on a quarterly basis an Employer's Quarterly Federal Tax Return, IRS Form 941.

12.	A professional employer organization ("PEO"), also known as an employee leasing company, was a type of company that entered into an agreement with an employer to perform some or all of the employer's federal payroll tax withholding, reporting, and payment functions. The PEO "leased" an employer's employees and thus became those employees' employer of record for payroll tax purposes. An authorized representative of the employer was required to sign and submit Forms 941 to the IRS. The original employer, not the PEO, was responsible for providing funds to the PEO so the PEO could make the required payroll tax payments to the IRS when the PEO filed a Form 941.

a.	Tax PEO, Tax P and P-Tax

13.	Tax PEO, Inc. ("Tax PEO") and Tax P, Inc. ("Tax P") (collectively, the "P Entities") were companies that were incorporated in the state of New York in or about March 2008 and September 2008 respectively, and operated from the United Offices.

14.	In 2008 and 2009, DENNIS SCIALPI was the President of Tax PEO. At the direction of CASTELLANO, John Doe #3, an individual whose identity is known to the Grand Jury, signed DENNIS SCIALPI's name on Tax PEO's Forms 941 that were filed with the IRS. In 2009, THOMAS SCIALPI was the President of Tax P. At the direction of

6

CASTELLANO, John Doe #3 signed THOMAS SCIALPI's name to Tax P's Forms 941 that were filed with the IRS.

15. The P Entities were purportedly PEOs that served as employers of record for various employees of the United Entities for payroll tax purposes. However, the P Entities were not in fact PEOs, never entered into agreements with any of the United Entities to provide payroll services and never provided payroll services to anyone. Instead, the P Entities outsourced all payroll servicing responsibilities to Company A, a company whose identity is known to the Grand Jury. The P Entities hired Company A to: (a) prepare paychecks to the United Entities employees who were supposed to be employed by the P Entities for payroll tax purposes; (b) remit payroll tax payments on those employees' wages to the IRS; and (c) prepare Forms 941.

16. CASTELLANO caused bank accounts for the P Entities to be opened in the names of the defendants DENNIS SCIALPI and THOMAS SCIALPI, respectively (the "P Entity Accounts"). Although the P Entity Accounts and the tax returns for the P Entities indicated that DENNIS SCIALPI and THOMAS SCIALPI owned and operated the P Entities, the P Entities were in fact operated and controlled by CASTELLANO.

17. In or about September 2009, CASTELLANO directed John Doe #3 to incorporate a company in the name of P-Tax, Inc. ("P-Tax") listing THOMAS SCIALPI as President. On or about September 9, 2009, THOMAS SCIALPI opened a bank account in the name of P-Tax. Although the incorporation documents and bank account information for P-Tax indicated that THOMAS SCIALPI owned and operated P-Tax, P-Tax was in fact operated and controlled by CASTELLANO. At CASTELLANO's direction, in or about

7

September 2009, paychecks for certain United Entities employees were no longer issued from Tax P's bank account and were instead issued from P-Tax's bank account.

18. Because CASTELLANO operated and controlled the P Entities and P-Tax, she was required to collect, truthfully account for and pay over to the IRS payroll taxes that were due and owing on wages of employees who were, for payroll tax purposes, employed by the P Entities and P-Tax. In fact, in order to avoid paying the IRS payroll taxes due and owing on the wages of the United Entities' employees, CASTELLANO ensured that the amount of funds transferred from the United Entities to the P Entity Accounts and P-Tax's bank account would be insufficient to satisfy the payroll tax obligations on these wages.

b. <u>DDND and DNDND</u>

19. DDND, Inc. ("DDND") and DNDND, Inc. ("DNDND") (collectively, the "D Entities") were companies incorporated in New Jersey in or about January 2010. The D Entities operated from the United Offices.

20. The D Entities acted as if they were PEOs that served as employers of record for various employees of the United Entities for payroll tax purposes. However, the D Entities were not in fact PEOs, never entered into agreements with any of the United Entities to provide payroll services and never provided payroll services to anyone. Instead, the D Entities outsourced all payroll servicing responsibilities to Company A. The D Entities hired Company A to: (a) prepare paychecks to the employees of the United Entities who were supposed to be employed by the D Entities for payroll tax purposes; (b) remit payroll tax payments on those employees' wages; and (c) prepare Forms 941.

8

21. CASTELLANO and THOMAS SCIALPI caused bank accounts for the D Entities to be opened in the name of Jane Doe (the "Jane Doe Bank Accounts"). Although the Jane Doe Bank Accounts and the tax returns for the D Entities indicated that Jane Doe owned and operated the D Entities, the D Entities were in fact operated and controlled by CASTELLANO and THOMAS SCIALPI. Because CASTELLANO and THOMAS SCIALPI operated and controlled the D Entities, they were required to collect, truthfully account for and pay over to the IRS payroll taxes that were due and owing on wages of employees who were, for payroll tax purposes, employed by the D Entities.

22. In fact, in order to avoid paying the IRS payroll taxes due and owing on the wages of the United Entities' employees, CASTELLANO and THOMAS SCIALPI ensured that the amount of funds transferred from the United Entities to the Jane Doe Bank Accounts would be insufficient to satisfy the payroll tax obligations on these wages.

23. By purposefully failing to transfer sufficient funds to the P Entity Accounts, P-Tax's bank account and the Jane Doe Bank Accounts to satisfy the payroll tax obligations associated with certain United Entities employees, and by agreeing to do so, CASTELLANO and THOMAS SCIALPI, together with others, did conspire to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the IRS in the ascertainment, computation and collection of more than $10 million in payroll taxes.

## COUNT ONE
(Conspiracy to Commit Bank Fraud)

24. The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

25. In or about and between June 2004 and July 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LARAINE CASTELLANO, also known as "Laraine Lia," THOMAS SCIALPI and DENNIS SCIALPI, together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud a financial institution, to wit: Comerica, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of Comerica, by means of materially false and fraudulent pretenses, representations and promises, to wit: the preparation and submission of false and fraudulent corporate income tax returns, Financial Statements, Quarterly Financial Statements and affirmations regarding the ESOP, all in connection with the 2004 and 2007 Loan Agreements, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Bank Fraud)

26. The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

27. In or about and between June 2004 and July 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LARAINE CASTELLANO, also known as "Laraine Lia," THOMAS SCIALPI

and DENNIS SCIALPI, together with others, did knowingly and intentionally execute a scheme and artifice to defraud a financial institution, to wit: Comerica, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of Comerica, by means of materially false and fraudulent pretenses, representations and promises, to wit: the preparation and submission of false and fraudulent corporate income tax returns, Financial Statements, Quarterly Financial Statements and affirmations regarding the ESOP, all in connection with the 2004 and 2007 Loan Agreements.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Commit Bank Fraud)

28. The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

29. In or about June 2007, the date being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant THOMAS SCIALPI, together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud a financial institution, to wit: Sovereign, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of Sovereign, by means of materially false and fraudulent pretenses, representations and promises, to wit: submitting false and fraudulent Forms W-2 and corporate tax returns to Sovereign in connection with the Yacht Loan, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

11

## COUNT FOUR
### (Bank Fraud)

30. The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

31. In or about June 2007, the date being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant THOMAS SCIALPI, together with others, did knowingly and intentionally execute a scheme and artifice to defraud a financial institution, to wit: Sovereign, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of Sovereign, by means of materially false and fraudulent pretenses, representations and promises, to wit: the submission of false and fraudulent Forms W-2 and corporate tax returns to Sovereign in connection with the Yacht Loan.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

## COUNT FIVE
### (Conspiracy to Defraud the United States)

32. The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

33. In or about and between January 2008 and April 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LARAINE CASTELLANO, also known as "Laraine Lia," and THOMAS SCIALPI, together with others, did knowingly and intentionally conspire to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the IRS in the ascertainment, computation and collection of more than $10 million in payroll taxes.

34. In furtherance of this conspiracy and to effect the objects thereof, within the Eastern District of New York and elsewhere, the defendants LARAINE CASTELLANO, also known as "Laraine Lia," and THOMAS SCIALPI, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

a. On or about December 17, 2009, CASTELLANO caused approximately $481,000 to be transferred from a United Entities bank account to a bank account in the name of P-Tax located in Staten Island, New York.

b. In or about January 2010, CASTELLANO and THOMAS SCIALPI caused a bank account for DDND to be opened in the name of Jane Doe in Staten Island, New York.

c. In or about January 2010, CASTELLANO and THOMAS SCIALPI caused a bank account for DNDND to be opened in the name of Jane Doe in Staten Island, New York.

d. In or about January 2010, CASTELLANO caused John Doe #3 to establish and incorporate the D Entities from the United Offices.

e. In or about January 2010, within the Eastern District of New York, CASTELLANO caused the D Entities to enter into agreements with Company A that were purportedly signed by Jane Doe, when in fact, Jane Doe never signed those agreements.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

35. The United States hereby gives notice to the defendants LARAINE CASTELLANO, also known as "Laraine Lia," THOMAS SCIALPI and DENNIS SCIALPI that, upon their conviction of Counts One through Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which requires any person convicted of any such offense to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offense.

36. If any of the above-described forfeitable property as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

14

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(2)(A); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2010R00132, 2015R00498, 2015R00499
FORM DBD-34          No.
JUN. 85

## UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA
*vs.*
*LARAINE CASTELLANO, also known as "Laraine Lia," THOMAS SCIALPI AND DENNIS SCIALPI,*

Defendants.

### INDICTMENT

(T. 18, U.S.C., §§ 371, 982(a)(2)(A), 1344, 1349, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____
                                                                        *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
                                                                        *Clerk*

*Bail, $* _____

_____

***Marisa Megur Seifan, Assistant U.S. Attorney (718) 254-6008***